UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA,

    -against-

NACHMAN HELBRANS, et al,        19 CR 497 (NSR)
(MATITYAU MOSHE MALKA)        Reply Memorandum of Law

                Defendant.

------------------------------------x

    Defendant Matityau Moshe Malka respectfully submits this Reply memorandum of law in further support of his pretrial motions.

Point I

    The State of Habitual Residence Remains the Critical Factor In Determining Parental Rights Under The IPKCA

    The Government's primary arguments in response to the defense multi-pronged motion to dismiss the IPKCA indictment counts is grounded in the incorrect assumption that the state of habitual residence is not a critical factor in determining parental rights under the IPKCA. In the Government's view if any Court in New York issues a Court order determining parental rights; temporary, or permanent; on notice or ex-parte; based upon truthful claims, or false claims; regardless of circumstances; the issue of a child's place of habitual residence becomes irrelevant for purposes of determining whether a violation of IPKCA occurred. This position is simply

1

wrong on the law.

At the outset, the Government's argument and interpretation is grounded in a fundamental misinterpretation of the IPKCA and the meaning of the term "State of Habitual Residence" as used in the Hague Convention and applicable to the IPKCA. It ignores the interaction and co-dependency of the IPKCA and the Hague Convention on the Civil Aspects of International Parental Child Abduction; and would make meaningless 1204 (d) which provides that the IPKCA does not detract from the Hague Convention international law statute.

Further it ignores or minimizes key language in United States v. Amer 110 F.3d 873 (2d Cir. 1997) and United States v. Houtar, 980 F.3d 268 (2d Cir. 2020) concerning the significance of the state of habitual residence of the children in determining "parental rights" under the IPKCA and also the legislative history of the IPKCA in which Congress made clear that "'parental rights are to be determined in reference to State law, in accordance with the Hague Convention ... " (H.R.Rep. No. 103-390 at 4 [1993]).

The IPKCA deals with international rather than intra-state travel, criminalizing the removal or retention of a child from one country to another. The Hague Convention on the Civil Aspects of International Parental Child Abduction is an international law statute addressing the same common problem

2

of the wrongful removal and retention of a child from one
country to another.  In this context when Article 3 of the
Hague Convention defines parental rights by "the law of the
State in which the child was habitually resident immediately
before removal or retention" [Art.3(a), Hague Convention]; it
is referencing any State which is a signatory to the Hague
convention, which would be a Nation State.

Article 31 of the Hague convention provides:

"In relation to a State which in matters of custody of
children has two or more systems of law applicable in different
territorial units –
a) any reference to habitual residence in that State shall
be construed as referring to habitual residence in a territorial
unit of that State;
b) any reference to the law of the State of habitual
residence shall be construed as referring to the law of the
territorial unit of that State where the child habitually
resides."

There is nothing in the holding in United States v.
Zodhiates, 901 F.2d 137 (2nd. Cir. 2018), a case predating
Houtar, which detracts from the position that the children's
habitual residence is critical in determining whether
violation of a particular Court order can be the predicate for
IPKCA criminal liability, in the context of removal of a child
from one country to another.

The appeal in Zodhiates involved primarily a jury charge
issue.  Zodhiates was convicted of conspiracy and substantive
violations of the IPKCA as a result of aiding and abetting the
removal of a 7 year old child from the United States to

3

Guatemala in order to obstruct the parental visitation rights of a parent.

The child at issue was born in the United States and at the time of removal was a habitual resident of the State of Virginia. The question in Zodhiates did not involve international law or travel and/or competing orders and/or custody/visitation claims between residents of Guatemala and the United States. Rather it involved an intra-state travel and full faith and credit issue.

The Court visitation order that was violated was initially issued in the State of Vermont. However, prior to the removal of the child to Guatemala, a Court in the State of habitual residence, Virginia, had issued an order recognizing and giving full faith and credit to the Vermont Court order as being controlling. So the order that was violated was in fact an order recognized, adopted by and enforceable in the State of habitual residence of the child.  Under Article 31 (c) of the Hague convention, the order would be deemed "... the law of the territorial unit of that State where the child habitually resides." So the order at issue in Zodhiates, unlike the Brooklyn Family Court ex parte temporary order at issue in our case, would unambiguously be an enforceable order under the terms of the Hague convention.

In conclusion, the Government interpretation of the IPKCA

4

that the state of habitual residence becomes irrelevant if a
court order exists, regardless of the circumstances leading up
to the issuance of the Court order, detracts from the Hague
convention. This interpretation would encourage rather than
deter a parent from engaging in self-help, the very conduct
proscribed by the IPKCA and the Hague act; by encouraging a
parent to abduct and remove a child from a country of habitual
residence against the child's wishes and that of the other
parent; and seek by any means, a temporary custody order in a
transient state to legitimatize the parent's improper conduct.

### Point 2

The Children Were Not Habitual Residents of New York When
the Brooklyn Court Issued the Ex Parte Custody Order

The Government alleges that the children at issue were
habitual residents of New York at the time of the alleged
statutory violation. The Government's position ignores the
undisputed material facts that the children had only a
limited, tenuous and temporal connection with New York at the
time of the alleged IPKCA violation. In any event, the
Government concedes that the children's habitual residence is
a question of fact. (Govt. brief, page 26).

### Point 3

Count 4 Should Be Dismissed as a Matter of Law

The Government's Memorandum of law in opposition (Govt.
brief, page 6) contains a single paragraph giving a cursory

description of the substance of there case against Mr. Malka on this count. They allege essentially no material facts establishing a prima facie case of an attempt to engage in Parental Kidnapping in March 2019.

### Point 4

There is no legal requirement for Malka to submit an affidavit in support of the motion to suppress statements to law enforcement on March 26, 2019, as the interrogation was recorded in a clear and audible video/audio recording.

WHEREFORE, for the reasons stated herein, as well as the original motion filing and papers submitted by co-defendants' counsel addressing common issues, the undersigned respectfully requests that the Court grant the relief requested in the defense motions together with such other and further relief as to the Court may seem just and proper under the circumstances of this case.

Port Chester, New York
February 26, 2021                    /S/ Joseph A. Vita
                              _____
                              Joseph A. Vita
                              Attorney for Matityau Moshe Malka