Hon. Nelson S. Roman

United States District Judge

United States District Court for the Southern District of New York

300 Quarropas Street

White Plains, New York 10601

RE: **United States v. Helbrans et al.; 19 Cr. 497 (NSR)**

**<u>Pretrial Subsequent Motion by Nachman Helbrans</u>**
**<u>for Urgent Essential Means Necessary for Defense Preparation</u>**
**<u>as well as complaining about (a small part of the) Prosecutors' Misconduct</u>**
**<u>as well as Relief Request Regarding Arraignment on Superseding Indictment</u>**

**[Oral arguments requested urgently]**

May 7, 2021

### I. Urgent Essential Means Necessary for Defense Preparation as well as complaining about (a small part of the) Prosecutors' Misconduct

Back on March 4, 2021, I (along with my friends Mayer Rosner, Matityau Malka, and Mordechay Malka), drafted and filed a motion to have access to the most basic technological means, which are essential in order to prepare our defense and to exercise our constitutional right of self-representation. There is no need to repeat what is already on the docket (My motion on ECF# 202-1, Mayer's motion on ECF# 203-1, Matityau's ECF# 215, Mordechay's ECF# 217-1).

I clearly stated in my motion why a laptop computer, various basic software related to: word processing, translation, document preparation, legal research, interviewing witnesses and experts, receiving documents and evidence, sending out documents for reviewing transcribing and translation, uninterrupted discovery review, trial and pre-trial courtroom presentation preparation, along with relevant internet access necessary for the software mentioned above and research, coupled with a basic printer scanner and copier, are all essential to my defense.

I do not believe that there is even a single attorney or even a paralegal in the entire 50 states that could function in 2021 without the above-mentioned technological basics. In 2021, a laptop computer that cannot be connected to the internet can be used only as a Gameboy for children or as a secondary data storage device. If, in addition to being internet disabled, all input and output ports are disabled, then the laptop could be used only for the first purpose, namely as a toy for a bored toddler. However, by no means could it be used as a tool for any functional office tasks.

 I never asked for unrestricted internet access nor an unfettered one and not a non-limited one; instead, I simply asked for internet access relevant to my defense. A simple reading of my previous 11-page motion is enough to explain what internet access is relevant and what not. It was also simple that the primary purpose of the requested technological means is to draft and print my pre-trial motions. However, some other

purposes were further detailed in my motion; all of them can be generalized as essential pre-trial defense preparation.

On March 5, 2021, and on March 18, 2021, the Honorable Court granted our request (ECF# 205 and 218) and issued a detailed order which directed our stand-by counsels to work with the jail management to supply the electronic devices and necessary software in a manner that will be both safe and secure for the jail security and yet effective for our defense preparation.

It must be noted, however, that the order was somehow ambiguous regarding relevant internet access, even though the spirit of the order on the background of our request suggests that the Honorable Court was confident in the facility's bona fide volunteered cooperation. In fact, a review of the transcript of the status conference (of the other defendants) on March 19, 2021, clarified that the Honorable Court considered the issue of the internet more or less granted and settled by relying on the good faith of the jail facility. For example, on page 13, (line 21-25) – page 14, (line 1-3):

> *"The Court has received a request from both Defendants Matityau Moshe Malka and Mordechay Malka for laptops to aid each of them in preparation of their defense and the Court granted both those orders and stand-by counsels were instructed as to how to proceed on that issue and to work with Westchester County Jail, where the Defendants are currently residing, to have **access to the laptops and Internet as well**. So that issue has been taken care of."*

Further in the transcript on page 25, (line 4-25) – page 26, (line 1):

> *"THE COURT: So, I think it would be most helpful if counsels -- stand-by counsels and appointed -- and, I'm sorry, retained counsel, that they confer -- they meet and confer and make a joint request to the facility, so that the facility is not inundated with six or seven different requests from different counsels, and I would ask if you could do that sooner rather than later. You can meet and confer. And, obviously, I don't want to suggest that you meet personally, but you can certainly set up some type of virtual meeting and discuss how best to approach the facility."*

> *"And, obviously, I would think that, you know, the pro se Defendants, obviously, they have to do a lot of the legal work on their own. They're going to be requesting a **considerable amount, amount of time to have access to the computer and Internet during the pendency of this case.** So, I would ask, you know, retained counsel and stand-by counsel to coordinate something, so that they can approach the facility jointly. And, again, I just want to remind all the parties that we are looking at a possible trial in mid-October, mid-to-late October, and that's how they*

> *should start preparing the case for, in the event that I rule -- I decide to rule -- I deny the motion to dismiss the Indictments."*

Further in the transcript, on page 28, (line 3-13):

> *"The Court: And, look, what I would say is that the attorneys, stand-by counsels and retained counsel, with respect to the request for access to the Internet, they should have a discussion as to how much time they're going to need on a daily basis -- their respective clients may need, how much time the **<u>Defendants are going to need on their laptops to access the Internet</u>**, and that request for that amount of time can be made to the facility, and then, actually, you know, if they get some pushback, then they'll circle back and reach out to chambers, so that if I have to issue an order on that issue, I can do so."*

Immediately after I was notified about the Court's decision, I wanted to facilitate and simplify the matter for our stand-by counsels; therefore, I prepared a list of the very basic and minimal hardware and software required for our defense preparation. Since I do not have any rational means to have a reasonable correspondence with my stand-by counsel (one of the very main reasons articulated in my previous motion for essential technological means), I worked around, and with a series of costly telephone calls and tele-visits, I managed to have my list emailed to my stand-by counsel, only to be engaged in another round of telephone calls with my stand-by counsel to finally verify the authenticity of the email (my list is attached as <u>Exhibit A</u>). The list was not an exhausting one, rather I, like the Honorable Court, was confident in the facility's bona fide volunteered cooperation, and I assumed that I could request in the future any missing hardware or software not listed on my list when its necessity would become apparent.

Unfortunately, reality (especially the bad one) always exceeds any imagination. The experience proved that the facility management chose to receive directions and orders solely from the Assistant United States Attorney, and jointly together, they brazenly and blatantly disregarded and ignored all explicit orders of the Court, let alone the spirit of the court order.

For some unexplained reasons,[1] the Assistant United States Attorney (disguising under cover of ad-hoc facility concerns created only because of the request of the AUSA), put

---

[1] The term "unexplained" here is in reference to that the AUSA never bothered to explain their unjustified actions. However, from a side-view perspective, their actions are self-explanatory; they are motivated by their desire to blackmail the defendants in this case, by causing them to believe, that whatsoever there will be no

their entire weight to de-facto annulate the court order and to render the anticipated laptop computer useless and ineffective.

The Westchester County Jail notified our stand-by consuls, in a series of email exchanges between March 12, 2021, and April 7, 2021, that they will only accept a computer that will come directly from the prosecution, and the prosecution will be responsible to "vet" the computer, to install all the software that the prosecution deems it necessary, and inspect all files on it, and the most important, to disable any possibility of communication to the internet, and not less important, to disable any input and output ports including wireless adapters, USB ports and printing capabilities. The jail clearly stated that they would not accept from our stand-by consuls any defense material whatsoever on any form (USB thumb drives, hard drives, CDs, etc.). Moreover, the jail management stated that if our stand-by counsels wish to have their clients view any material, they could only preload it to the laptop before sending it to the prosecution for the "vet".

When our stand-by consuls tried to explain the necessity of minimal internet access or of the printing possibilities, and/or to mention the already issued court order or the possibility of requesting a clarification from the Court, the jail management (on the advice of the prosecution), threatened to remove us and to separate us in different facilities. The correspondence between the stand-by-counsel and the jail facility is attached as <u>Exhibit B</u>.

My stand-by-counsel, Mr. Koffsky indicated to me in a letter dated April 19, 2021, as follows: "*I continue to work on getting you a laptop that is more functional than just a small black brick.*". I got an identical update in a follow-up letter dated April 22, 2021. It seems, however, that the prosecutors worked much harder, that I should **not** get "*a laptop that is more functional than just a small black brick.*". To date, it seems that the work of the prosecutors overcomes the work of the defense counsel.

The jail management and the prosecution justified their outrageous disregard of the federal court order by claiming that they are not obligated to follow federal judges since

---

possibility for them to prepare for trial, let alone to get a fair trial, so the defendants should be "smart enough" to plead guilty sooner rather than later, on international parental kidnapping rather than on international sexual human trafficking or even worse (as anticipated) on international terrorism charges (based on the alleged asylum request to Iran).

they are working for a county jail. We received the same answers when we tried via the prison Jewish chaplain to request to meet one of the facility's administration staff authorized to listen to our request, and we sent to the commissioner and other facility officials the order of the court along with the motion we filed. The unambiguous answer was that a federal judge could not intervene in a county jail and under no circumstances could we get access to a printer or a USB thumb drive or a hard drive, let alone any access to the internet, and if we continued to insist about technological means, we would be transported to another facility.

All this is in total contrast to what we were promised by multiple officers, sergeants and captains, before drafting our previous motion, that one order of a federal judge would resolve the issue. The contention of the facility and the AUSA that a federal judge cannot order a county jail regarding a constitutional right of a federal pre-trial inmate is outrageous, in light of the fact that the county jail is in contract with the federal government and are paid millions of federal taxpayers' resources money for their part of their contract. Instead of citing dozens of dozens of cases of federal inmates getting specified means (including computers, CD's, printers and copiers, and internet access) in county jails on the order of federal judges, I will simply challenge the prison facility and the AUSA to find even one case in the entire US history where a county jail defied an order from a federal judge regarding a federal pretrial detainee. By the way, I already cited some cases in my previous motion; the only difference is that in all of those cases which I cited, the defendants were not "extremist Jewish", so they deserve due process. In addition, in those cases, the prosecution was probably not too much afraid of what the defendants might argue on their motions, therefore they had no problem in complying with the court orders to provide proper defense tools for the defendants. In this case, it seems that the prosecution is greatly worried about what we may prove to our defense that they went crazy to stop any meaningful means of law research, fact-finding and document preparation. Their behavior speaks volumes to the merit of our defense.

By the way, the irrationality of the facilities and the prosecution's contentions is also proved from one of the US federal statutes mentioned in the additional bogus charges in the just filed superseding indictment. Namely 18 U.S. Code §2243(a) and (b) that reads

*"Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, __or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency,__ knowingly engages in a [specified felony]… or attempts to do so, shall be fined under this title, imprisoned… or both."* So, it is clear that the contract or agreement of a state, county or private facility with the federal government subjects the facility to federal jurisdiction, and therefore there is no logic why they should be less subject to orders from a federal judge than a federal facility. Let alone regarding a federal detainee.

Even more, either under 42 U.S.C. § 1983 or the Habeas Corpus petition act, federal courts on all levels were more than once involved in post-conviction requests from state prisoners regarding complaints on the state's prison condition. Including complaints about access to the court and legal assistance, which usually details the Law library and legal research abilities of the state's prison. Always it is judged on the merits, whether there is actual injury shown, whether the injury amounts to a constitutional infringement of rights, whether the petitioner has standing etc. I never see such a blank claim that a federal judge is not entitled to order to a state prison even regarding the rights of a state prisoner.

For example, in Lewis v. Casey, 518 U.S. 343, 350 (1996), the Supreme Court writes:

> *"the rights that bounds acknowledged was the (already well-established) right to access the court… in the cases to which bound traced its roots, we had protected that right by forbidding state prison officials from actively interfering with inmates' attempts to prepare legal documents… or file them…"*

In fact, the Court noted in the Lewis v. Casey case at 355 that the rights of an imprisoner are limited to what needed to attack his sentence directly or collaterally and to challenge the condition of his confinement, and that, *"impairment of any other litigating capacity is simply one of the incidentals (and perfectly constitutional) consequences of conviction and incarceration."*

It is implied that for pre-trial detainees, any impairment of litigating capacity is not "perfectly constitutional", because they are presumed innocent. I am not there yet; I did not ask any litigating capacity behind what is essential to prepare for trial and to prevent it "is perfectly unconstitutional".

While there is no need in this case to meet the "actual injury standard" required for invoking a standing regarding a claim under 42 U.S.C. § 1983 since I am not a convicted state prisoner, rather I am a pre-trial detainee, presumed innocent, under total federal care and responsibility. However, in fact, an actual injury is evident on its face; the constitution guarantees a speedy trial and two months of pre-trial incarceration. On top of the previous 28 months incarcerated, this that we are prevented from defense preparation because the jail facility, on the advice of the prosecutor, decided to ignore an explicit court order is an aggravated injury in the first degree. Not to mention that if this situation continues, we will not be able to prepare for trial. If this is not considered an "actual injury" so literally nothing else could be considered so. So, the federal authority over the matter is more than obvious. I do not see how in the world the jail facility is allowed to ignore a legitimate federal court order by claiming that the marshals could remove the defendants somewhere else, just as I do not think that any other state or federal facility can do so to circumvent a court order that they are not satisfied with. (Just in case the Court will decide to consider this motion as a Habeas Corpus or a section 1983, I directed my stand-by-counsel to send a copy of this motion along with my previous motion and the relevant court orders to the warden of the facility).

Internet access is not a legal taboo even for post-conviction prisoners, let alone pretrial detainees. For example, In *Pollack v. Holanchock, 10 CV 2402 (RPP) (S.D.N.Y. May 9, 2012)* regarding a post-conviction state prisoner, the judge opinioned as follows: *"The Court urges the parties to reach a settlement in this case. The law is well settled with respect to Plaintiff's right of access to the courts. Plaintiff must be provided with a law library or constitutionally acceptable substitute to attack his sentence or conditions of his confinement. See Bounds, 430 U.S. at 827. Defendants should be able to draft a consent order which will be agreeable to both parties and also terminate this action, thus preserving for Plaintiff the rights he obtained in the Court's Order of September 9, 2010. The consent order could mirror the language of the Court's September 9, 2010 Order* ***granting Plaintiff internet access to free legal research websites such as FindLaw and Wikipedia Legal Research, as well as access to both incoming and outgoing legal correspondence"***. There are many more cases regarding pre-trial detainees (some of them, quoted in my previous motion). It is worth noticing that some county jails in the country

provide any way-controlled internet access for legal research.[2]  In any case, the contention that a federal judge cannot order internet access for a federal detainee when the judge determines that this is necessary to preserve the detainee's due process rights has no place in the American jurisprudence.

While the facility may have a legitimate reason not to allow "unfettered internet access" for the entire jail's population, and it may be more convenient for them that no detainee should have any kind of internet access, their convenience cannot and should not deprive any human being of his constitutional rights. The jail management staff entered the business voluntarily, and thereby they obligated themselves to be responsible for the constitutional rights of any detainee, and in case they cannot distinguish between legitimate and illegitimate requests, they should follow the opinion and the order of the judge familiar with the case. The facility **can** easily provide internet access for the defendants in a safe manner; there are dozens of reliable and affordable programs for restricting, monitoring, and recording internet activity. The facility needs only to be **willing** to do it. Unwillingness and convenience desires of 2 or 3 business persons is not a justification for depriving five defendants of their constitutional rights.

The deprivation of essential means for defense preparation and the exercise of self-representation violates more than one constitutional right, including but not limited to the fifth amendment right of due process (by inflicting a bunch of obstacles on the trial preparations), the sixth amendment right of speedy trial (by significantly delaying the time needed for defense preparation), the right of being comforted with the witness against him and obtaining witnesses in his favor (by forbidding a reasonable opportunity to locate, investigate and interview both potential government and defense witnesses alike and most of all it is violated the constitutional rights allowing a defendant to defend himself effectively).

---

[2] E.g., Bay v. Ken (1-CV-12-00732, US District Court M.D. of Pennsylvania, October 18, 2012), the country jail noted that they usually provide internet access on a portable Law Library on a weekly basis or more upon request.

Already in the beginning of the post-*Faretta* era, the law professor J. F. Donovan in his article, "*JAILED PRO SE DEFENDANT AND THE RIGHT TO PREPARE A DEFENSE*" published in the Yale Law Journal Volume 86: 292, 1976,[3] noted as follows:

> "*In the due process clauses of the Fifth and Fourteenth Amendments, then, rests a guarantee that the defendant in a criminal prosecution will be granted an adequate opportunity to prepare his defense. This is not to say that a pro se defendant may later complain that he was denied a fair trial because of his own improvident strategy, bad tactics, errors of judgment, lack of skill, mistake, carelessness, incompetence, inexperience, or failure to prepare when the opportunity was available. Nor can he later complain that a different or better result would have been obtained had he chosen to accept representation by counsel.*
>
> **If, however, the state jails a pro se defendant before trial, refuses to provide him access to legal research materials, prevents him from contacting witnesses essential to his defense, and prohibits him from conducting necessary investigations, the defendant may well complain that the state's denial of an adequate opportunity to prepare has compromised his due process right to a fair trial. <u>As Judge Rives has bluntly and accurately written:</u>** (*Brooks v. Texas, 381 F.2d 619, 624 (5tl Cir. 1967)*) **<u>"Any experienced trial lawyer knows that a purported trial without adequate preparation amounts to no trial at all.</u>"**"

The intervention of the prosecution team in this blatant contempt of court is not a mere speculation; rather, all the circumstantial evidence points to this direction.

1) At the status conference on March 4, 2021, AUSA Jim Lightenberg all of a sudden retreated from their written promise to the court (ECF# 169), signed by the prosecution and filed on February 5, 2021, to supply the defense within 30 days, the requested 3500 material.[4] The reason that Mr. Lightenberg gave is that he needs

---

[3] I received it from my stand-by-counsel, Mr. Koffsky, as well as other law review articles dealing with such government misconduct. In the past, he sent me also some other valuable cases and reviews that were helpful to me, including the 2016 edition of the "Federal criminal practice: a second circuit handbook", I extremely appreciate it, and I am thankful for it; it is beneficial and useful, but I (as well as my stand-by-counsel) do not consider it as an alternative to my own legal research, instead it is usually a starting-point guide where to start researching. There was a suggestion at the status conference that the stand-by-counsels should conduct the legal research for the defendants. At least in my case, it did not work out until now, mainly because the stand-by-counsels have a caseload and must share their business time between all cases, and my case, I think, requires complete devotion giving the desire of the government to destroy our Jewish community. In addition, sometimes I have different opinions of my stand-by-counsels, I may read cases or laws differently, and it is impractical to do extensive legal research when you are not necessarily convinced or completely understand what the research is about. So, I do not see an alternative for my own legal research.

[4] The following is a quote from the government's memorandum, page 80, "*Nevertheless, in order to avoid any adjournment or delay in the trial which might conceivably occur if Jencks Act material were not produced until after the Government's witnesses have testified, the Government will adhere to its customary practice of producing Jencks Act material prior to trial. In fact, in this case, the Government will be*

*producing substantial materials pursuant to 18 U.S.C. § 3500, which will also include impeachment material—including notes of meetings with witnesses and the contents of electronic devices belonging to witnesses—within the next 30 days, subject to an appropriate protective order being signed. This very early disclosure of 3500 material—done before a trial date is even set—is more generous to the defendants than the standard practice in this district to produce such material shortly before the beginning of trial, or, if additional time is reasonably required to review such material, sufficiently in advance of the witness's testimony so as to avoid any delay at trial."*

In no way could my current motion, which is written via a third party using crazy methods of expensive multiple tele-visits, discuss the endless manipulations and lies of the government regarding their discovery obligation in general, and in particular their obligation under *Brady v. Maryland, 373 U.S. 83 (1963).* Despite the clear order of the Honorable Court dated February 5, 2021, regarding the discovery of Brady material and the Honorable Court going into details to explain these obligations (it was even published by the local publisher), still the government, after 28 months of incarcerating the defendants, does not produce most of the Brady material. The parts of the discovery which they did produce were intentionally delayed and manipulated, making the use of it less than minimal. To put it short, the government takes advantage of the exception in rule 16 (not related to Brady material), which exempts prospective government's witness' notes until required by 3500 (Jencks), and in a creative manipulative way, they labeled each and every piece of evidence which clearly proves our innocence as just Jencks, and then they falsely claimed that they produced already all Brady material.

Just for an example, I will list here only a few objects and pieces in the government's possession that they know or should know about their existence and about their relation and possible (actually certain) relevance to our defense.

1. Nowhere in the discovery could be found even a small part of the entire paperwork and discussion which led the U.S. embassy in Nuevo Laredo to unlawfully abduct the children and utilize against them brutal force, to transport them forcefully to the U.S. against their will and against the will of the parent who accompanied them (This was well before the sham court order of November 14, 2018). Any reasonable person would understand that the illegality of the abduction of the children could be used to favor the one who subsequently tried to rescue them.

2. Nowhere in the discovery could be found even a small part of the conversation the American embassy and Mexican officials and others known to the government had with the children while they were in Nuevo Laredo prior to brutally forcing them to the United States against their wishes. Any reasonable person would understand that such bitter and frustrating experience of the children could and should invoke merciful human feelings from anyone who cares for the children, let alone their father or their uncle or the father-in-law or the husband/brother-in-law, and **may** favor the defendants (the word "may" is used to mimic the government but actually all that is required under Brady) and may have an impact to prove for the judge or the jury the defendants intent in any alleged subsequent rescue efforts.

3. Nowhere in the discovery could be found even a small part of the discussions whatever between the ACS or the Amudim organization or anyone else with medical experts, which led to the decision to forcibly admit the children in an unknown children's hospital in New York, apparently to secure their silence and impede them from requesting to talk to their father or to participate in the proceedings that actually deprived them of their liberty and fundamental human rights. Any reasonable person would understand that such bitter and frustrating experience of the children could and should invoke merciful human feelings from anyone who cares for the children, let alone their father or their uncle or the father-in-law or the husband/brother-in-law, and **may** favor the defendants and may have an impact to prove for the judge or the jury the defendant's intent in any alleged subsequent rescue efforts.

4. Nowhere in the discovery could be found a comprehensive medical report of the abducted children in an unknown children's hospital in New York, something that will undoubtedly reveal statements of the children expressing their desire to return to their father and their community as well as their frustration with their forcible admission to the hospital. A heavily redacted segment of the medical report was produced in the discovery of the Hague Convention case in the Brooklyn Federal Court,

and ultimately the same redacted segment could be found in the "extremely generous" and "voluminous" discovery of the government. However, the missing pages of the hospital report are probably the ones that are really Brady material, and those missing pages are actually missing. So again, the government produced anything but Brady material. In addition, all the video files and audio recordings (including from security surveillance cameras) and the notes of the medical staff are all Brady material. Any reasonable person may conclude that a forced admission of helpless children should mitigate the "serious crime" of trying to rescue them and secure their liberty. (Human trafficking / terrified kidnapping/ children's exploitation, you name it, all of them are synonyms definitions according to the AUSASDNY 2021 dictionary of: trying to rescue Jewish children that the feds decided "to take care of" at any cost).

5.   Nowhere in the discovery could be found even a small part of the efforts the father Rabbi Aaron Teller and his friends Aron Rosner and Shmiel Weingarten tried to locate the children and to know their whereabouts, through multiple approaches, first to the US embassy in Nuevo Laredo and then after to the various ACS offices in New York who maliciously denied having any knowledge in regards to the children and ultimately when they admitted knowledge about the children they maliciously held up the father for supposedly questioning while an associated organization (Amudim) secured an ex parte decision from a bribed judge based on a false declaration under oath that the father is actually detained in Mexico, and then immediately serving the father on camera with the fresh-baked "legitimate court order". Any reasonable person would understand that such bitter and frustrating experience of the defendants or anyone else associated with them with government or queasy-government agents should play in favor of the defendants and should have an impact to prove for the judge or the jury their intent in subsequent rescue efforts. (Only a short few seconds duration video of the actual paper serving inside the ACS office, taken by a private person without mentioning the serving location, is actually found in the discovery. This short video taken out of context is not necessarily favorable for the defendants, so actually, the government produced everything but Brady material).

6.   Nowhere in the discovery could be found even a small part of the multiple child protection (ACS) paperwork, legal considerations, notes, audios and videos, etc., that could have authorized them to use brutal force against the children on multiple occasions without any authorization from a judge.

As a matter of fact, I know that the father, Rabbi Aaron Teller, along with Aron Rosner and Shmiel Weingarten, tried multiple times to report the abuse of the children under the hand of their kidnappers to the ACS. Any reasonable person would understand that any attempt of the defendants or anyone else associated with them to end the abuse of the children through government or queasy-government channels should play in favor of the defendants and should have an impact to prove for the judge or the jury their intent in subsequent rescue efforts.

Nowhere in the discovery could be found even a small part of the multiple police encounters with my poor niece Yante. On or about November 20, 2018, Yante tried to file her own petition in the Kings County Family Court, and she was prevented by a group of hostile and armed NYPD officers who took directions from the ACS, and threatened Yante, and used brutal force to pull her away from the courthouse. Shmiel Weingarten and Aron Rosner both were involved in this attempt to rescue Yante via court proceedings. Any reasonable person would understand that any attempt of the defendants or anyone else associated with them to end the abuse of the children through the court should play in favor of the defendants and have an impact on proving for the judge or the jury their intent in subsequent rescue efforts.

7.   Nowhere in the discovery could be found even a small part of the discussion that the police and child protection agents had between themselves or with anyone else (including Yante) on and around November 20, 2018, which justified the use of excessive force to prevent Yante from filing her motion to be emancipated or be under her father's custody. Any reasonable person would understand that any unjustified decision (and even justified decision that was not delivered by the police and the ACS to the father or to anyone known to help Yante) of the police and/or the ACS to impede or place obstacles in the way of Yante and Chaim from approaching the court, should play in favor of

the defendants and should have an impact to prove for the judge or the jury their intent in subsequent rescue efforts.

8. Nowhere in the discovery could be found even a small part of the discussion between ACS caseworkers and NYPD officers, and mental officials or others authorized or unauthorized, regarding the decision to forcibly admit Yante Rosner (Teller) in a mental health institution under suicide watch, just after refusing to let her file her motion for emancipation. Any reasonable person would understand that in any way, those discussions could heavily play for the favor of the defendant. If Yante Rosner really vowed to commit suicide because of the injustice she perceived of the ACS, NYPD, and others, then it is just reasonably why responsible family members tried to save her life by helping her to avoid future harassments that could lead, God forbid, committing suicide. In case there was no suicide vow or threat, then admitting forcibly and brutally a young orthodox bride under suicide watch for two weeks when she cannot even have her privacy during bathroom or bath, all just to punish her for her insisting on her liberty and religious freedom, should cause "reasonable doubt" about the multiply dynamic theories of the government regarding the defendant's intent (1. For ransom or reward as stated in the complaint of December 2018. 2. For obstruction of justice as stated in the complaint of March 2019. 3. For obstructing parental rights as stated in the indictment of July 2019. 4. For criminal sexual activity or illicit sexual conduct as stated in the indictment of April 2021). At the very least, no person with an average knowledge above the age of 10 would reasonably believe that it has no importance or relevance as a mitigating factor regarding punishment. So, the absence of such records, long after the court-ordered Brady material and the government falsely claimed multiple times that they already comply with the order, could not be described in any other word than intentional malicious obstruction of justice and blatant disregard to the laws and the humanity.

9. Nowhere in the discovery could be found even a small part of the discussion medical records of the mental institution where Yante was held under suicide watch after her failed approach to the Kings County Family Court, no security cameras documenting the treatment she received against of her will for more than two weeks. This brutal deprogram or let us call it "medical treatment", included, of course, multiply discussion Yante had with psychologists and psychiatrist regarding her wishes to be liberated and come back to her husband, her father, community and family; however, all that are maliciously missing from the "generous" discovery. Let alone subsequent threat Yante received from Grunhut (apparently in coordination with the ACS and/or the AMUDIM organization) that if she continued to insist on her liberty, she would be locked up in the mental institution for her entire life. All of these records, or in the alternative, a certificate of lack of records, from the mental institution and their entire physical and mental staff, the ACS and AMUDIM and their staff, are obviously related to determine the wishes of Yante and consequently the intent of her loyal family and friends by providing her help in her desperate escape. Nevertheless, the "generous" discovery of the "generous" persecutors generously omitted all that in order to avoid any possibility of the defense lawyers mentioning anything of that in the first 28 months of the defendants being incarcerated and subsequently generously working with the jail facility to prevent from the defendants any essential technological means to prevent the defendants from complaining about the generosity of the government or from obtaining by themselves exculpatory evidence that the government generously tried to suppress.

10. Nowhere in the discovery could be found the multiple videos of the various airports and commercial airplanes I used along with Yante Rosner and Chayim Teller in their escape on December 8, 2018. Those videos will show that no "Kidnaping" take place, they were never restraint, I bought them food in Shabbat (because their safety, health, and well-being took precedent by me over Shabbat in accordance with the commands of God that: "lifesaving trumps Shabbat"), they were left alone for hours in front of security personal, when I go somewhere else in the airport to pray. The comprehensive collection of the security cameras would debunk the government's imagination that I ever used false passports (or any other ID) for Yante and Chayim. No identification documents are required for minors under the age of 18 on domestic flights. I technically could not use any false ID for minors in a domestic flight, even if I wanted to, let alone when I was not even thinking about it, not to mention conspiring with an entire village to take part in it. So, from where these charges were

born is a discussion for itself. In any case, the security cameras would play only in my favor. Instead, the government picked up just one segment of me accompanying the children in the TSA security, and this is just enough for the government as "overwhelming evidence" of conspiracy, terrifying kidnapping, use of false documents, breaching airport security (terrorism?), human trafficking and criminal sexual activity. The big part of the Brady material, however, is missing.

11. Nowhere in the discovery could be found the security cameras footages and airlines flight records that Jacob Rosner flew from Philadelphia to San Diego (via Chicago) on Friday, December 7th, 2018, and then immediately after crossed the US border by foot to Tijuana in Mexico. He entered legally in Mexico and even paid for an extended visa of 180 days. The government must have known about Jacob Rosner leaving the USA well before his wife Yante and his brother-in-law Chayim escaped from their captivity under Grunhut. I once reviewed a letter in the discovery from the NYPD that details the above-mentioned flight. (USAO_008314).). There is in the discovery the Mexican immigration documents of Jacob Rosner (As I detailed in my previous motion, most of the government's "generous" discovery is inaccessible in the antique laptops the facility provided, so I am unable now to pinpoint this document since the document is inaccessible now because internet connection is required to update the pdf reader) that clearly indicates that Jacob Rosner legally entered Mexico on December 7th. The American embassy, in coordination with the FBI, illegally seized his valid passport (along with the passports of Nachman Helbrans, Mayer Rosner, Uriel Goldman, Matityau Malka, and Joel Helbrans) that contains the original Mexican entry stamp of Jacob dated December 7th. Nevertheless, the government, in order to secure the indefinite incarceration of Jacob Rosner, made up a story that actually Jacob Rosner was in the car in the southern district of New York when his wife escaped from captivity on December 8th. They repeat this lie (along with many other lies) again and again, and recently they found it necessary to incorporate this lie (and many others) in the fresh-baked indictment. Any reasonable person would conclude that the absence of Jacob from the country at the time of his wife escape, especially given the fact that the escape occurred on Shabbat that except for life-saving purpose Jacob could not be connected to his wife's escape, should play in Jacob's favor and ultimately in all the defendants' favor. However, the government intentionally withheld the passport, the flight records, and the security video footage, in addition to preventing the defendants from conducting their own investigation, and on top of all, they declared in open court that they complied with all the Brady obligation. Let us be reasonable; how can you expect the prosecutor to help you uncover his own lies?

This motion is in no way a comprehensive Brady request list. It is just the tip of the iceberg. It is just a small fraction of what I know, not necessarily the most outrageous one because I tried to go in chronicle order. But since it is almost two months that I tried to work on this simple letter, I must leave it there. I need an entire month to detail the material that their existence is known to me and explain their relevance and how they should play in my favor. However, this requested month, I mean to say, with a functioning computer and all the necessary programs and the relevant internet connection along with a printer and a scanner, and a working schedule of six days per week and no less than 10-12 hours per day. On the crazy way that I work now via tele-visits and phone calls, it would probably take one year to complete just the discovery request. In any case, this is just a footnote and a kind of a disclaimer that my silence at the status conference does not constitute an agreement to the government's lies regarding their discovery manipulations. Only a future writing from me filed on the docket could be considered an agreement regarding the government's discovery compliance.

I assume that the government tries to manipulate the Court, the public and the defense by categorizing the entire Brady material as "3500 material" etc., thereby using and manipulating a language in rule 16 that exempts the government's witness statement from rule 16 obligations. However, at least one of the defense lawyers, Mrs. Wolfe, explained to them already that once a statement or document contains a possible favorable value for the defense, it is Brady material, regardless that it can **also** be categorized as 3500 material or rule 16, etc. In fact, the Brady case itself dealt with a government witness statement. If the delay in producing Brady material is causing a substantial delay prior to trial, let alone when the defendants are incarcerated, then it cannot be

to work out certain unspecified "security concerns" with the jail administration prior to any additional discovery. The statement by itself was perceived by me and others as strange, unexplained and suspicious. However, the subsequent declaration of the jail administration that will only work with the prosecution, an event unexplained by itself, leads to the unavoidable conclusion that the discussion between the prosecution and the jail administration was how to manipulate the defendants and the Court, out of "security concerns" that providing the defendants with the essential technological means to prevent their defense could lead to their exoneration, undoubtedly a "security concern" from the prosecution perspective.

2) In the follow-up status conference on March 26, 2021, the prosecutor, Mr. Sam Adelsberg, said in the proceeding that he spoke to the jail facility, and they vow that the defendants will never get access to what he calls "unfettered internet" (something that we never asked for). When the Court tried to get a clarification as to whatever the jail facility only express concerns about unfettered internet or they actually vow to forbid from the defendants even the relevant essential internet access, the prosecutor gave evasive and elusive answers. There is no reasonable explanation what business exactly Mr. Adelsberg has with the commissioner, deputy commissioner, warden or captain, that during this business, the jail management discusses with him the exact details regarding our defense preparation. By circumstantial evidence, the prosecutor pressured the jail management to abuse their power and to disregard the Court's decision and the due process of the defendants until they secured such a declaration and ultimately became the advocate for this declaration.

---

considered **timely** as required in the Brady case. To put it simply, the government, with the unnecessary manipulative actions, take a risk that the most dangerous enemies of the republic (if the indictment should be taken seriously) will go free only because of government's misconduct, and would be able to continue to marry their daughters and their sons before they reach the age of 18, presumably a danger for the very existence of the global peace (or at least the peace between the prosecutors responsible for the misconduct).

Just as I left this footnote, May 3, 2021, I received "Group Discovery #9", no any of the hundreds of the withheld Brady material appeared there, let alone the promised "generous" 3500 material. What we got, however, is a declaration of the government (not for the first time) that they completed their Brady obligation. They did not even begin. As we said already, when (if at all) we will have a chance to speak and write, we would elaborate more, God's willing.

3) In the very same status conference, Mr. Adelsberg, after claiming that "he does not take sides one way or another", said that he wants to inform the Court about the "fact" that the defendants had already access to legal research on the internet, on a program that is based on "Thomson Reuters" and is basically the same as "Westlaw", he further points out that our previous motion that includes "extensive legal research" actually proved that we do not need any more legal recourses. On which planet there is such wonderful thin air that Mr. Adelsberg uses to make up this "fact" is not for me to answer, just as I cannot answer which thin air he uses to make up that "forced marriages" and "frequent beatings" are a common practice in Lev Tahor, but in any case, it has nothing to do with the truth. The program in the so-called "Law Library" of the jail is called "Casemaker", and it is not the Casemaker available for law students on the internet; rather, it is a special version made for jails. If I am not mistaken, it is a part of a nonprofit effort by some NGO. In any case, it contains only published cases from federal and the state of New York and the text of status books that are stored in some network drive inside the facility. The content is updated once in few years. When I wrote my previous motion, the recent updates were either from 2015 or 2017 (depends on which part). I noticed, however, that in mid-March, the contents were updated; I appreciate it, and I actually re-research many of my previous searches, but in any case, it is not connected to the internet, the program is frustrating old and outdated, and freezes every few minutes, the search engine of the program is limited for searching specific words (not subjects etc.), it is a matter of luck to find anything, let alone to conclude what would be considered good law in this circuit. The comparison between the jail's Casemaker and WestLaw is the comparison between MS-Notepad and Microsoft Word, there are some similarities, but I do not think that in the last three decades, MS-Notepad was used to edit a significant motion in a US court or that a jail Casemaker can be used to determine the actual law. The unexplained claim of Mr. Adelsberg proves that he is the one behind the obstruction of due process in order to secure a guilty plea or a conviction.

4) When the attorney Mrs. Wolfe (stand by counsel of Mordechay Malka) received the decision of the jail that no printing would be allowed, because as the jail

concluded (against the conclusion of the Court), *"there is no need for the defendants to print anything"* behind the possibility of ordering for a fee on a limited basis some published cases. Mrs. Wolfe asked the prosecutor, Jim Lightenberg, how he thinks the defendants could print out a motion and if he thinks that this is not a necessity. Mr. Lightenberg replied that he discussed the issue with the jail management and he was "informed" that the defendants will be allowed to "print" their motion on a typewriter. It is worth noting that the typewriter is only available in the so-called "Law Library", and any use of it, is instead of researching the law in the luckily 3 hours or so per week, let alone that most of the time the typewriter is out of order, or ink/paper is missing. In any case, the suggestion of Mr. Lightenberg is basically like that: (1) I should research the law on the jail's Casemaker, write down notes with my handwriting either in Hebrew/Yiddish or in my crazy English writing. This should include copying down all the quotes from cases and laws that I considered relevant. Then (2) I should use the computer vetted by the prosecutor to make up a motion and benefit from the offline grammar or dictionary, if the offline grammar or dictionary will actually function at all. The computer, of course, will not be in the "Law Library". Then (3) I would have to write down the entire motion by hand with the jail's pencil. Then (4) I should return to spend the next few weeks/months/years on the "Law Library", based on 3-4 hours per week (in a lucky case), this time just to use the typewriter to type my illegible English handwriting of the previously typed motion. It is useless to explain the nonsense of such a suggestion. In any case, when attorney Mrs. Wolfe expressed her frustration about the "generous" suggestion of Mr. Lightenberg and concluded that the prosecutors are only manipulating the defense, she gets a reply from Mr. Adelsberg that he reassures his "seriousness" to enable the defense to prepare for trial. The evidence is clear and convincing; it is the prosecutors who use the jail facility as a mean to deprive the defendants of due process because they feel

that otherwise, they could not secure the guilty plea or conviction of the "terrifying kidnapers"[5] and "outrageous human traffickers"[6] of this case.

If the prosecution's team is not prevented immediately from the pattern of misconduct in this case, the results would be farce and mockery of justice (just in case we are not there

---

[5] I am not cynical. This is the actual language, among other offensive and prejudice phrases the government described our arrest on December 28, 2018, See Exhibit C. The legality of such defamation and incitement by the government prior to trial will be discussed, God's willing, when there will be an opportunity to do so.

[6] I am again not cynical at all; this is the actual language, among other offensive and prejudice phrases, the government described the filing of new charges on April 19, 2021, See Exhibit D. And again, the legality of such defamation and incitement by the government prior to trial will be discussed, God's willing, when there will be an opportunity to do so. In fact, I try my best to let the government know that they are going too far, even from a legal point of view and even according to the most liberal and permissive standards. At first, on July 2020, I drafted a personal letter, 230 pages long, addressed to then US attorney Mr. Geoffrey Berman explaining to him that his and his assistants' statements regarding the Jewish community cannot be considered anything short of religious persecution and savage antisemitism. I am more than confident that if I was successful in completing and translating this letter, our case was settled long ago, saving millions of dollars from the taxpayers' money. However, the letter is stuck, along with my and my friends' detailed affidavits, up to the moment that we will have an opportunity to write something significant. In any case, my determination to give the government a choice to see the truth caused me to request a meeting with the government. As soon as I came back from my *Faretta* hearing, Mayer Rosner and I wrote a letter in Yiddish; we were not even successful in typing it for one week, so we sent it anyway, see Exhibit E the draft translation. After a month, the government agreed to set up one video conference with a list of unreasonable conditions, conditions which apparently are not stemming from truth-finding missions, see Exhibit F. Nevertheless, we replied to the government by writing that Mayer Rosner and I are undertaking the conditions laid out by the government; still, we noted that the same that the government may use our statements during the meeting against us in court, we should also be able to use the contents of these meetings for our defense in court. We also noted that we believe that we can work out better conditions that might be more favorable for the defendants as well to the government, but we will not propose that now, we could start the meetings under the conditions of the government and during our first meeting or before that we will offer new conditions; however, we clearly expressed that either way we will accept the government's conditions if we have no other chance to have meetings with the government under different conditions, see Exhibit G. On March 29, 2021, the government replied to my stand-by-counsel: *"we do not consider this a signed agreement given the caveat and attached letter. once again, we will only meet when this agreement is signed by the defendants (without any caveats or additional conditions). please let your clients know that this is not a negotiation."* See Exhibit H.

Mayer Rosner and I do not understand, the government are mounting such serious allegations against a religious group Lev Tahor as a whole, and alleges that Lev Tahor leaders are a ring of enterprise criminals who exploit their vulnerable members and abuse their children, allegations that were already proven countless of times by several authorities in several countries to be without merit, and proved unambiguously by professionals to be just the opposite, and we are just trying to clarify all this to the government before trial, so maybe the case could be settled without all this defamation and persecution, we did not put any caveats or conditions before the government, should the government be able to use our statements before a grand jury or jury and we could not introduce those same statements in court just in case the prosecutor takes them out of proportion? Is this called a caveat?

While I certainly understand that the government might not always want to meet a defendant and listen to his version of the story, in our case, when the government targets a whole Jewish community, and at the same time that two of the alleged leaders are running after the government and requesting to meet and clarify the very same issues and are ready to answer all the questions of the government, the government is denying their request and busy running to the grand jury and requesting a new indictment based on all those serious allegations, such behavior is really disgraceful and outrageous.

already), as the law Professor Donovan noted in his above-mentioned article (page 297) as follows:

> "*The farce and mockery standard places upon the complainant a heavy burden in demonstrating the requisite unfairness, and reviewing courts have been reluctant to allow their consciences to be shocked. Yet it is clear that the standard is breached when inadequate preparation deprives the accused of his defense: in many cases in which counsel failed to undertake investigation and research essential to adequate trial preparation, reviewing courts have held that the proceeding amounted to a farce and mockery of justice. The dynamics of trial are such that it cannot be said that inadequately prepared counsel invariably will render the trial a farce and mockery of justice: an experienced and well-trained lawyer could, perhaps, mount a respectable defense in a simple criminal trial with very little preparation. **However, when a pro se, untrained in law and inexperienced in trial procedure, is forced to defend himself without having had an opportunity to prepare, a trial that is a farce and mockery of justice will almost certainly result.** Any procedure so likely to result in a deprivation of due process must itself offend due process. As Justice Powell recently stated (Mathews v. Eldridge, 424 U.S. 319, 344 (1976)): "Procedural due process rules are shaped by the risk of error inherent in the truth finding process as applied to the generality of cases, not the rare exceptions.""*

I could not explain to the Honorable Court how difficult it was for me to draft my previous and current motion. Just for this motion, I had to tire out several volunteers for two months to take and write down my words through expensive tele-visits and phone calls, a motion which have taken a day or two if I just had the computer, and after all, in the end, the motion does not look the way I wished it to be. Such way is a crazy one, those volunteers are already getting exhausted, they have their own life to manage, a defense preparation in such a manner is useless, let alone that it is going to take several years just for the pretrial motions all while we are incarcerated as of today for more than 28 months without any essential defense tools. We do not think it is fair that after being deprived of defense rights for more than 28 months and so much time excluded from the Speedy Trial Act, the facility may take revenge on us and threaten to transfer us to different facilities, a process which could take another two months; and who knows if at the other facilities we would be granted our religious needs, kosher food, let alone the difficulty of preparing a defense while not being together.

As a conclusion of this part of the letter, I proved already for your Honor that if the Court will not order clear and detailed instructions to solve all the above in a compelling and binding manner, nothing will develop further, the injustice will just worsen, unless the Honorable Court would intervene. I thought to prepare and offer a draft for the Court to save the Court's time, but I am not capable of doing so for the same reasons explained retrospectively.

Your Honor, before I go further, I would like to reference the Court to 18 U.S.C. §3142(i)(4) *"The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."* From all compelling reasons, congress legislators saw as important to specify just the reason of "preparation of the person's defense."

Your Honor, I am not now in the position to request bail, and I will explain why. In the end, all of us are human beings, and even we think we could judge things rationally and based on facts, still, when we hear allegations that are unilateral and in such a manner which is intended to shock the conscious, all of us are unintentionally becoming one-sided and prejudiced. If I happened to be a judge and people would talk to me for hours and hours orally and in writing that the defendant in front of me is a satanic cult leader, a cult whose main theory and purpose is to abuse innocent children, kill infants and make cannibalistic festivals, it would not help me the explicit instructions of the legislators of defense preparation possibilities; those shocking allegations would unintentionally force me to believe that this satanic cult leader is guilty, even before trial, and he is extremely dangerous to be released into society should it be on any conditions or circumstances.

If your Honor, will meditate and analyze what the government is doing here, especially with the new superseding indictment and press releases I attached here, it could quickly be realized that the government is just appealing for antisemitic prejudice of the public, no chance of a fair trial could exist in such manner. The only way how we can get a fair trial is if we would be given a chance to disassemble the whole Babel tower the government built and pop bubble by bubble of all the grapevine stories the prosecution inherited from

unknown and known scandalmongers available in abundance on the internet. This is a tough and lengthy job; still, this is the only way how to restore the objective view of the public and of the chamber, which was so unfairly lost because of the manipulative tactics of the government. As such, I would not request bail at the moment since doing so with the background of the press releases and indictments would cause a shock to the conscious, such a dangerous people would be released, they would be a danger to every boy and girl in New York. Nevertheless, since as of today, I did not succeed in writing and demonstrating the falseness of all the above due to all the limitations we currently face, I think it would be proper to refer the Court to this section of 18 U.S.C. §3142(i)(4).

## II.   Relief Request Regarding Arraignment on Superseding Indictment

This section is related to all the above as well. On April 19, 2021, the government filed superseding indictment and indicted us on new charges. Your Honor, this indictment is not similar to any other indictment in the world, the indictment on its face alleges such allegations which there is no way to prove them and neither their relevance to this case. For example, on page 3, the government states: *"children in Lev Tahor are often subject to physical, sexual, and emotional abuse."* The government does not even say that Nachman Helbrans or Mayer Rosner have always abused physically, sexually, or emotionally these or these children or on this or this occasion, no, they say just "children in Lev Tahor are subject…"  they do not mention who allegedly did it, Nachman Helbrans or Mayer Rosner or others, with their knowledge or without their knowledge, on their own children or on other children, on which occasion, etc. They said: *"frequent beatings and forced marriages"*, did the alleged victims endure frequent beatings, was the alleged victim Yante Rosner (Teller) married by force? Who forced her? If she was not forced, how are all this gossips relevant to this case. There is no answer to that, Your Honor.

Your Honor, I could not enter a plea on such charges, not a guilty plea, neither a not guilty plea.

I would like to reveal to Your Honor that we, Nachman Helbrans and Mayer Rosner have decided, that if everything goes further in the way it goes currently, we would rather go into an agreement with the government and plea guilty on one or two charges. However, the government is not willing to meet us; still, we consider anyways doing so without

meeting the government even there are some drawbacks of doing so, as they are some advantages as well. However, Your Honor, I will never tell a lie in court, the same as I would never withhold the truth from the court. When I want to plea guilty, I want that the factual basis of it should be in writing and not orally, it should be clear on what Mayer Rosner and I are pleading guilty, I cannot plead guilty whatsoever under any circumstances on an indictment which in each and every charge of it repeats such segments that an entire Jewish community are guilty of child abuse, etc., all while we currently have in our possession hundreds of evidence to show to the government which proves just the opposite and hundreds more could be obtained if due diligence would be the interest and if just our hands would not be tied and our tongue not cut. I cannot plead guilty just because I want to return home to my wife and children; sure, I want to see my wife and children again, and one day all these sufferings must come to an end, but I cannot plead guilty in such a manner. I must explain what is true and what is not.

I hereby ask the Honorable Court that the arraignment on the superseding indictment should occur in person since in the previous status conferences, the court reporter clearly said that she could barely understand what I talk and cannot record everything that I say. The combination of my accent, broken English with the prison-level technology does not give me even the opportunity to speak to the Court. With all the concerns I have on Covid-19 for me and others, if there needs to be an arraignment, it must be in person. I do not ask that everyone be present in person; it would not bother me if my side-counsel or Mayer Rosner's side-counsel would appear telephonically.

During the arraignment, I do not plan to plead guilty or not guilty; I plan to explain to the Court why this indictment as it is informs neither me nor Mayer the nature and cause of the accusation. I plan to raise just a few issues on this matter. Mayer and I need a full day in court under oath for this purpose and initially at least three hours of uninterrupted talk besides clarification requests. After the three hours, I could answer under oath all the questions and concerns of the Court and the government as well. I will try to bring along with me all the documents I could, and what I could not, I will tell orally when and how I can bring it. And if, after all that, Your Honor will decide that incarceration is the only option, I will accept it, especially if Your Honor would go further and explain that to me.

I suggest to the Court that for the best interest of justice, an exception should be made for the arraignment scheduled for May 14, 2021, that Mayer Rosner and I should be able to appear together to save the Court's time from hearing each of us for three hours. Should we join the arraignment, each of us could adapt a part or the whole of the other one's arguments.

I know that this means to take the entire day of the Court, but this entire day could save a lot of headache and resources for the Court and all parties involved; a lot of taxpayers' money would be saved. In the end, it would play for the best interest of the defense and the government as well. How the government currently drives the case is not in the best interest of the government itself.

I hereby ask the Court to order the government to stick to its order of the list of the defendants in the indictment and conduct the arraignments on the defendants in the order laid out in the indictment, Nachman Helbrans and Mayer Rosner first and then the other defendants in the order mentioned there.

I thank Your Honor in advance for taking into consideration to grant us our rights of due process.

Sincerely yours,

Nachman S. Helbrans