
U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

October 15, 2021

**BY EMAIL AND MAIL**

The Honorable Nelson S. Román
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Nachman Helbrans and Mayer Rosner*, S3 19 Cr. 497 (NSR)

Dear Judge Román:

      The Government respectfully submits this letter to flag several evidentiary matters with respect to the Court's Opinion and Order (the "Opinion") resolving the parties' motions *in limine*. (*See* Dkt. No. 388). In the Opinion, the Court directed the Government not to "refer to the Lev Tahor community or its leaders as members of a 'cult'" nor "insinuate that leaders brainwash or force members of the community to behave in or observe their religion in a certain way." (*Id.* at 32; *see also id.* at 51 ("If the Government presents evidence suggesting that Lev Tahor is coercive or that particular aspects of religion constitute indoctrination, they are opening the door to some, though not all, of the evidence that Defendants may seek to introduce to indicate that their practices are not coercive.")). This order included a prohibition on the Government referring to Lev Tahor's former adherent as "survivors." (*Id.* at 33). The Court also concluded that certain of the Government's evidence regarding the rules and practices of Lev Tahor is admissible. Specifically:

- Testimony regarding the rules and practices of Lev Tahor would be admissible as direct evidence of charged crimes "[i]nsofar as this testimony relates to marriage and sexual practices involving individuals under the age of sixteen." (*Id*. at 33-34).

- Evidence of "the Defendants' involvement in arranging marriages including marriages involving children as young as twelve or thirteen years old, and particularly the marriage of Minor-1 to Jacob Rosner when she was fourteen years old is inextricably intertwined with the evidence regarding the charged offenses." (*Id.* at 35) (internal citations and alterations omitted).

- Evidence "regarding uncharged wrongs or bad acts within the Lev Tahor community" so long as they are "limited to evidence directly related to the Defendants' involvement in arranged marriages and/or encouragement and facilitation of sexual activity involving children under the age sixteen." (*Id.* at 37).

The Government will, of course, abide by the Court's evidentiary rulings. In that vein, the Government respectfully writes to flag for the Court certain evidence that it seeks to elicit from two witnesses—CC-1 and Witness-1—both of whom were married to minors at the behest of Lev Tahor leaders and instructed to follow the strict rules governing marriage and sex in Lev Tahor.

## A. Certain Marriage/Sexual Activity Evidence Regarding CC-1

- **Relevant Background for CC-1**: CC-1, a former member of Lev Tahor, was required by Lev Tahor's leadership, including the defendants, to marry his wife (now ex-wife). At the time of his wedding, CC-1 was 18 years old and his wife was 17 years old. He will testify that his marriage was arranged by the defendants, that he did not meet his wife until the middle of his wedding, and that he did not feel as though he had a choice in entering into the marriage or following Lev Tahor's practices regarding sex.

- **Testimony**: CC-1 will testify that the punishment for flouting rules in the community—including rules regarding marriage and sex—ranged from public shaming to the separation of families to being kicked out of the group with no ability to remain in contact with family members still in the community. CC-1 recalls specific examples of Lev Tahor leaders, including the defendants, meting out these punishments, including to himself and family members, and including for the violation of rules regarding marriage. CC-1 will further testify that Nachman Helbrans typically announced new rules in the community and Mayer Rosner was one of the group's main enforcers of these rules, including by being in charge of family separations for those deemed to have disobeyed the leadership's rules, including marriage rules. Because of his fear of these punishments, CC-1 followed Lev Tahor's rules regarding marriage and sex and did not voice any opposition to his arranged marriage.

- **Basis for Admission**: This evidence is admissible under the Court's prior evidentiary ruling because it relates to marriage and sexual practices and helps explain how the rules relating to marriage and sexual practices were implemented and enforced by the defendants. This evidence is separately admissible because it explains CC-1's state of mind when he was persuaded to join the conspiracy and assist in the kidnapping and provides necessary background for CC-1's decision to join the conspiracy. *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (noting that it is proper to admit prior act evidence to "inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed"). In particular, CC-1 had fled the sect only two months before the victims were kidnapped, and his decision to assist the defendants in the kidnapping conspiracy was heavily influenced by his desire to be re-united with his wife. CC-1's wife was still in the group—living at the home of Mayer Rosner—and the Lev Tahor leadership prevented her from talking to CC-1 following his departure from Guatemala. The night before the kidnapping, CC-1's wife called him for the first time since he fled, and he understood from this call that she would be required to divorce him unless he helped the defendants kidnap the victims. Thus, testimony regarding the defendants' influence over marriages in the community explains CC-1's state of mind at

the time he received this call and provides necessary context for his willingness to join the conspiracy and help the defendants with the kidnapping.

**B. Certain Marriage/Sexual Activity Evidence Regarding Witness-1**

- **Relevant Background for Witness-1:** Witness-1, a former member of Lev Tahor, entered into a marriage arranged by Lev Tahor leaders when he was 25 years old and his wife was 15 years old. They tried to have sex, consistent with community rules and expectations, but ran into difficulties, including that the wife was experiencing pain.

- **Testimony**: Witness-1 will testify that, due to the difficulties they were facing, he and his wife stopped attempting to have sex at some point. When the leaders of the community learned of this, he will explain, he was told that if he and his wife did not keep trying and make it work, they would be separated. Witness-1 knew this was a legitimate possibility because he had witnessed other couples and families be separated in the past for disobeying the rules. Accordingly, Witness-1 and his minor wife continued to try to have sex, to avoid being separated.

- **Basis for Admission**: This evidence is admissible under the Court's prior evidentiary ruling because it relates to marriage and sexual practices and helps explain how the rules relating to marriage and sexual practices were implemented and enforced by the Lev Tahor leadership. Likewise, this evidence demonstrates the importance of sex and procreation to the Lev Tahor leadership. And the evidence helps explain why Witness-1 and his wife continued to try to have sex, despite the pain she was experiencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/
     Samuel Adelsberg
     Jamie Bagliebter
     Jim Ligtenberg
     Daniel Tracer
     Assistant United States Attorneys
     (212) 637-2494 / 2236 / (914) 993-1953

cc:   Defense Counsel (by ECF)
     *Pro Se* Defendants (by mail)