

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

October 21, 2021

**BY EMAIL & ECF**

The Honorable Nelson S. Román
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Nachman Helbrans and Mayer Rosner*, S3 19 Cr. 497 (NSR)

Dear Judge Román:

      The Government respectfully submits this letter in response to defendant Nachman Helbrans's motion *in limine* to exclude the testimony of Witness-1, a former member of Lev Tahor. (Dkt. No. 409). As detailed further below, Witness-1's testimony is admissible as direct evidence of the sexual exploitation conspiracies. To the extent, however, that any of this testimony constitutes "evidence of any other crimes, wrong or act," it is admissible as direct evidence of the charged crimes, or, in the alternative, pursuant to Federal Rule of Evidence 404(b), to show the defendants' motive, intent, knowledge, opportunity, and a common scheme or plan.

      **I.**    **Background**

      **A. Witness-1's Anticipated Testimony**

      The Government expects Witness-1 to testify regarding Nachman Helbrans' and Mayer Rosner's knowledge and promotion of marriage and sexual practices involving girls under age 16. Witness-1 was a member of Lev Tahor from 2009 to 2011, and—in that capacity—he personally observed Helbrans and Rosner attending and participating in multiple marriages of children under age 16. He will testify that Helbrans and Rosner were leaders of Lev Tahor and that they both had prominent, specific roles in these underage weddings. In addition, Witness-1 will testify regarding Helbrans' and Rosner's roles in his own marriage to an underage girl. When Witness-1 was 25 years old, Lev Tahor leaders arranged his marriage to a 15-year-old girl. Witness-1 will testify that Helbrans and Rosner both attended the wedding. In addition, he will testify that Rosner called him during the middle of his wedding night to inquire about whether the marriage had been consummated. Witness-1 will further explain that, following his wedding, when he and his wife had difficulties having sex, Rosner pressured Witness-1 to keep trying to have sex with the teenage girl and offered advice for how to make the sex work. Finally, Witness-1 will testify regarding

Helbrans' and Rosner's participation in efforts to hide the underage marriages from the outside world.[1]

## B. The Court's Prior Opinion on the *Motions in Limine*

On October 12, 2021, the Court issued an Opinion and Order (the "Opinion") resolving the parties' motions *in limine*. (*See* Dkt. No. 388). In the Opinion, the Court concluded that while certain practices of Lev Tahor would be inadmissible—*i.e.*, "evidence suggesting that Lev Tahor is coercive or that particular aspects of religion constitute indoctrination," (*id.* at 51)—other evidence regarding the rules and practices of Lev Tahor is admissible. Specifically:

- Testimony regarding the rules and practices of Lev Tahor would be admissible as direct evidence of charged crimes "[i]nsofar as this testimony relates to marriage and sexual practices involving individuals under the age of sixteen." (*Id*. at 33-34).

- Evidence of "the Defendants' involvement in arranging marriages including marriages involving children as young as twelve or thirteen years old, and particularly the marriage of Minor-1 to Jacob Rosner when she was fourteen years old is inextricably intertwined with the evidence regarding the charged offenses." (*Id.* at 35) (internal citations and alterations omitted).

- Evidence "regarding uncharged wrongs or bad acts within the Lev Tahor community" so long as they are "limited to evidence directly related to the Defendants' involvement in arranged marriages and/or encouragement and facilitation of sexual activity involving children under the age sixteen." (*Id.* at 37).

The Court also concluded that testimony from Witness-1 regarding the defendants' involvement in child marriages and, in particular, Rosner's instructions to Witness-1 regarding how and when to have sex with Witness-1's 15-year-old wife, is admissible as direct evidence of the conspiracy. (*Id.* at 35). The Court, however, precluded the Government from eliciting testimony from Witness-1 that Rosner told him to use force if necessary to adhere to the proscribed schedule for sexual activity. (*Id.* at 36).

## II. Applicable Law

### 1. Other Acts Evidence as Intrinsic or Direct Proof

If evidence is relevant to a charged offense, it is generally admissible at trial. Fed. R. Evid. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

---

[1] The Government has carefully limited Witness-1's proposed testimony based on the Court's October 12, 2021 opinion, as described further below.

"An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992). Uncharged acts are admissible in a conspiracy case where they are used to (i) explain the development of the illegal relationship between co-conspirators; (ii) explain the mutual criminal trust that existed between co-conspirators; and/or (iii) complete the story of the crime charged. *See United States v. Mercado*, 573 F.3d 138, 141–42 (2d Cir. 2009). In other words, evidence of uncharged criminal activity is admissible "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012) (citation and internal quotation marks omitted); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007). Even if the evidence does not directly establish an element of the offense charged, it can be admitted "in order to provide background for the events alleged in the indictment." *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (citation omitted). "In particular, evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense." *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) (citations omitted); *see also United States* v. *Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime.").

### 2. Other Acts Evidence Pursuant to Rule 404(b)

Federal Rule of Evidence 404(b) provides, in relevant part, that:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

It is well established that evidence of uncharged crimes, wrongs, or other acts is admissible under Rule 404(b) if the evidence (1) is advanced for a proper purpose; (2) is relevant to an issue in the case; (3) has probative value that is not substantially outweighed by any unfair prejudicial effect, and (4) if requested, is admitted with limiting instructions to the jury. *See United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992). The Second Circuit "follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (quoting *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996)); *see also United States v. Moran-Toala*, 726 F.3d 334, 345 (2d Cir. 2013).

The Supreme Court has recognized that other acts evidence "may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). Trial courts, therefore, have broad latitude in determining whether to admit evidence pursuant to Rule 404(b). *Inserra*, 34 F.3d at 89.

Finally, it is proper for a trial court to admit "other crimes, wrongs, or acts" evidence if it helps to prove the existence of a common scheme or plan. *See* Fed. R. Evid. 404(b) (establishing that "evidence of any other crime, wrong, or act . . . may be admissible" to prove a "plan"); *United States v. Reed,* 639 F.2d 896, 906 (2d Cir. 1981) ("[E]vidence of the [other] transactions was ... admissible to show a common scheme or plan."); *Carofino v. Forester*, 450 F. Supp. 2d 257, 272 (S.D.N.Y. 2006) (noting that "evidence demonstrative of pattern" or a common scheme or plan "is admissible under Rule 404(b)"); *see also United States v. O'Connor*, 580 F.2d 38, 41 (2d Cir. 1978) ("The rubric of scheme or plan has been used to cover a multitude of particular situations, which do not fall into simple categories.").

### 3. Rule 403

Regardless of whether the evidence is admitted as direct evidence or as other acts evidence under Rule 404(b), the evidence is, like all other evidence, admissible under Federal Rule of Evidence 403 only if its probative value is not substantially outweighed by the danger of unfair prejudice. Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). Other crimes evidence is not unfairly prejudicial where it is not "any more sensational or disturbing than the crimes" with which the defendant has been charged. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *see also United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (Evidence is not unduly prejudicial under Rule 403 when it is not "more inflammatory than the charged crime[s]."); *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) ("Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." (citation and internal quotation marks omitted)). The fact that evidence may be damning does not render it inadmissible. *See United States v. Cirillo*, 468 F.2d 1233, 1240 (2d Cir. 1972).

### III. Discussion

The Court has already concluded that testimony relating "to marriage and sexual practices involving individuals under the age of sixteen"—including evidence relating to Witness-1's child marriage—is admissible.   (*Id*. at 33-34). The Court's prior ruling is sound and should not be disturbed by the defendant's attempt to re-litigate a settled issue by citing to a media report about Witness-1 and an out-of-context statement in an FBI 302.

As an initial matter, Witness-1's anticipated testimony is crucial to "provide the jury with the complete story of the crimes charged." *Inserra*, 34 F.3d at 89. Indeed, this expected testimony goes to the heart of the charged conspiracy for several reasons. *First*, evidence of the defendants' promotion of child marriages, including Witness-1's child marriage, demonstrates their direct involvement in the child exploitation offenses charged in Counts One and Two. Indeed, in order to meet its burden on Counts One and Two, the Government must prove at trial that a dominant purpose of Jane Doe's kidnapping was to continue her illicit sexual relationship with Jacob Rosner. Because evidence of the defendants' involvement in child marriages and their desire that child marriages take place is crucial to explaining the charged conspiracies, this evidence is "inextricably intertwined with the evidence regarding the charged offense[s]," *Hsu*, 669 F.3d at 118, in that it "provide[s] background for the events alleged in the indictment," *Coonan*, 938 F.2d at 1561. *Second*, this evidence "explain[s] to the jury how the illegal relationship between the participants in the crime developed." *Pitre*, 960 F.2d at 1119. Witness-1 will testify that when he was a member of Lev Tahor, both Helbrans and Rosner were leaders of the group and that their leadership roles bestowed upon them significant influence among the members of Lev Tahor. It was this influence that the defendants weaponized during the kidnapping of Jane and John Doe when they enlisted their co-conspirators to participate in a brazen international kidnapping.

Notably, the relevant time period of Witness-1's testimony does not undermine the relevance of the evidence. In fact, quite the opposite: Witness-1's testimony about these illicit marriages occurring a decade ago—and the defendants' direct involvement in initiating, fostering, and administering them and the illicit sexual conduct that ensued—demonstrates that the defendants' conduct with respect to Jane Doe was not an aberration but just a more recent manifestation of an intentional, longstanding practice. Moreover, it bears noting that the practice never ceased as child marriages in Lev Tahor continued throughout the intervening period and only intensified once Nachman Helbrans became the top leader of the sect. *See United States v. Towne,* 870 F.2d 880, 886 (2d Cir. 1989) (noting that "[t]he continuous possession of the same gun does not amount to a series of crimes, but rather constitutes a single offense" and finding that the evidence of possession on other days was direct evidence of the charged offense); *see also United States v. Romero–Padilla,* 583 F.3d 126, 130 (2d Cir. 2009) (per curiam) (although evidence of defendant's previous plans with a co-conspirator to import narcotics "did not concern the charged conspiracy, it was relevant background evidence inasmuch as it corroborated the charge that [the co-conspirator] and [defendant] were partners during the charged conspiracy" such that Rule 404(b) did not apply); *United States v. Lopez*, No. 09 CR. 525 (JFK), 2010 WL 3452380, at *3 (S.D.N.Y. Sept. 1, 2010) (cooperating witness testimony describing "a long-term, continuous, and evolving relationship" with the defendant is "inextricably intertwined" with the charged conspiracy "and would complete the jury's understanding of how the conspiracy came to be."); *United States v. Canales,* No. 09 Cr. 976, 2010 WL 2505578 (VM), at *1 (S.D.N.Y. June 7, 2010) (in case involving conspiracy to throw away non-waste mail, "testimony regarding prior instances of mishandling of the mail is sufficiently intertwined with evidence regarding the charged offense to be probative of the existence of the conspiracy, including the relationship, if any, between [defendant] and her alleged co-conspirators").

In the alternative, this evidence is admissible pursuant to Rule 404(b) to show the defendants' motive, intent, knowledge, opportunity, and a common scheme or plan. The

defendants may present some combination of the following arguments: (i) they were unaware of Jane Doe and Jacob Rosner's sexual relationship; (ii) they did not seek to facilitate the continuation of Jane Doe and Jacob Rosner's sexual relationship during or after the kidnapping; (iii) reuniting Jane Doe with Jacob Rosner was not a dominant purpose of the kidnapping; and/or (iv) Jacob Rosner was not acting at their direction in marrying Jane Doe, engaging in a sexual relationship with her, and/or participating in her kidnapping in order to continue their sexual relationship. Witness-1's testimony regarding Nachman Helbrans' and Mayer Rosner's direct involvement in promoting child marriage and child sex—and their attempts to hide child marriage and child sex from the public—would thus be highly probative evidence to rebut these potential defenses by demonstrating the defendants' motive, intent, and knowledge regarding their participation in the charged conspiracies. Notably, courts routinely admit evidence of prior related illegal activity where a defendant contests his knowledge or intent with respect to the charged conduct, and do so even where many years have passed between the prior conduct and the charged conduct. *See United States v. Terry*, 702 F.2d 299, 316 (2d Cir. 1983) (admitting 20-year old narcotics conviction on the issue of intent and guilty knowledge); *United States v. Allums*, No. S6 15-CR-153 (VSB), 2018 WL 2128372, at *5–6 (S.D.N.Y. May 9, 2018), *aff'd* 858 F. App'x 420 (2021) (admitting 1997 narcotics conspiracy conviction at trial for participation in a separate narcotics conspiracy between 2011 and 2016 where knowledge and intent at issue). Moreover, this evidence—even if somewhat dated—manifests the defendants' "common scheme or plan" to facilitate the sexual exploitation of young girls by marrying them off to older men in their community. *Reed*, 639 F.2d at 906.

Finally, this evidence is also admissible under Rule 403. For the reasons stated above, such evidence is highly probative of the defendants' participation in the charged conspiracies. Moreover, the evidence is not any more inflammatory than the sexual exploitation offenses charged in the Indictment, *see Livoti*, 196 F.3d at 326, and, if admitted, would be presented in a streamlined way.

### IV. The Defendant's Arguments

In support of his motion to preclude Witness-1's testimony, Helbrans asserts three principal arguments: (1) the defendants were not leaders of Lev Tahor when Witness-1 was a member of the community (Def. Mot. at 2); (2) Witness-1 will be testifying about inadmissible evidence, including evidence detailing corporal punishment and beatings and evidence based on surmise, conjecture, or hearsay (*id.*); and (3) Witness-1 has purportedly already admitted to the Government that he lacks a complete recollection of the events for which he will be called to testify (*id.*).

Beginning with the defendant's first assertion, the Government expects three witnesses—Witness-1, CW-1, and the mother of Jane and John Doe—to testify that the defendants were leaders in Lev Tahor long before the community moved to Guatemala, including during the period when Witness-1 was a member of the sect.[2] Thus, their involvement during this period in the

---

[2] The defendant mischaracterizes the Indictment as stating that the defendants only took on leadership roles when the original leader of Lev Tahor died in 2017. The Indictment says no such thing. Nachman Helbrans and Mayer Rosner have long been leaders within Lev Tahor. Nachman Helbrans became the *head* of Lev Tahor after his father passed away in 2017. Of course, that does

management of the sect in general, and in child marriages in particular, is highly relevant for the reasons described above.

The defendant's second assertion—that Witness-1 will testify about corporal punishment and/or present hearsay—is belied by the actual expected testimony of Witness-1, as outlined above. Witness-1 will not be testifying about corporal punishment or beatings (unless, of course, the defendants open the door to such testimony on cross-examination), nor will he be testifying about any of the defendants' conduct that post-dated his membership in the sect. Witness-1 will only be testifying regarding matters that he experienced and for which he has a proper basis to testify.

Finally, Helbrans' citation to an FBI 302 report—which states that Witness-1 noted that "he does not have a complete recollections [sic] of events that happened a decade ago"—has no bearing on the question presented here: namely, whether Witness-1's testimony is admissible with respect to the crimes in the Indictment. (Def. Mot. Ex. A). The defendants are, of course, free to cross-examine Witness-1 on his recollection of events, but any purported fuzziness in Witness-1's memory goes to the weight of the evidence, not its admissibility. *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9480448, at \*3 (S.D.N.Y. Dec. 29, 2015) ("The fact that there is some evidence to impeach [the witness's] opinion — including Plaintiff's (presumably imperfect) recollection of the traumatic seconds before his crash — goes, again, to its weight, not its admissibility."). In that vein, it bears noting that the defendant relegates to a footnote the remainder of the sentence in the FBI 302: "but [Witness-1] has confidence in his contemporaneous notes." *Id*. Thus, the reliability of Witness-1's testimony—to the extent the Court finds this at all relevant to this analysis—is corroborated by Witness-1's contemporaneous notes thus minimizing the impact that the passage of time may have had on his memory.

Moreover, the statement in the FBI 302 is merely that Witness-1 does not have "*complete* recollections"—not that he does not remember anything. It is hardly surprising that someone would not remember every minute detail of events from ten years ago. But, of course, people regularly retain memory of events from ten years or more in the past—particularly where (as here) those memories pertain to significant events in their lives, like their engagement, wedding, wedding night, and sexual experiences. And Witness-1's acknowledgement that he does not remember every single aspect of events that happened ten years ago demonstrates that he is thoughtful about what he does and does not recall, and that he will carefully confine his testimony to those events that he does recall.

---

not mean that he was not one of the leaders of Lev Tahor before that, and the Government has always alleged that Lev Tahor has a group of top leaders. And it is not surprising that, upon the death of Shlomo Helbrans, someone from that leadership group would become the new head of Lev Tahor, and that Mayer—a longtime Lev Tahor leader—would remain part of the leadership.

## V. Conclusion

The Government submits that Witness-1's testimony should be admitted as direct evidence of the charged conspiracies or, in the alternative, pursuant to Rule 404(b) to show the defendants' motive, intent, knowledge, opportunity, and a common scheme or plan.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Samuel Adelsberg
Jamie Bagliebter
Jim Ligtenberg
Daniel Tracer
Assistant United States Attorneys
(212) 637-2494 / 2236 / (914) 993-1953

cc: Defense Counsel (by ECF)